IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JENNIFER L. BAKER                                                                    PLAINTIFF

V.                                                              CAUSE NO.: 1:18-CV-18-SA-DAS

CITY OF TUPELO, MISSISSIPPI                                                        DEFENDANT

ORDER AND MEMORANDUM OPINION

Jennifer Baker filed her Complaint [1] on February 5, 2018, alleging that her termination from the City of Tupelo, Mississippi police force violated Title VII of the Civil Rights Act, the Fair Labor Standards Act, and the United States Constitution's First Amendment and Equal Protection clause. Now before the Court is the Defendant's Motion for Summary Judgment [40]. Briefing is complete, and the issues are ripe for review.

*Factual and Procedural Background*

The Tupelo, Mississippi Police Department hired Jennifer Baker as a patrol officer in September of 2013. Baker had law enforcement experience as a patrol officer for the city of San Diego, California. Over the next few years, Baker's annual performance reviews were positive, and the Department promoted her and gave her several pay raises.

In 2015, the Department placed Baker under the direct supervision of Lieutenant Lee Miller. According to Baker, Miller made statements indicating a sexual interest in her and when she did not reciprocate, Miller sexually harassed her. Baker filed a formal grievance and Miller was immediately taken off her shift. Around this same time, Baker was aware of a federal lawsuit against Miller filed by her co-worker, Tiffany Gilleylen. Baker submitted an affidavit in the Gilleylen case in support of Gilleylen's discrimination claims against Miller. Although Baker completed her affidavit in the Gilleylen case before she was terminated, the affidavit was not

submitted to the Court until after she was terminated. In her Complaint Baker alleges that this affidavit, and her personal complaints about Miller, ultimately resulted in her discharge.

In the Fall of 2016, Baker suspected that the Department was not properly compensating employees for overtime hours. Baker sent an email to Lieutenant Mansell about the Department's failure to pay overtime. This email led to a meeting on January 3, 2017 with Baker, Deputy Chief Allan Gilbert, and Captain Tim Bell. They assured Baker that they would look into it, and Baker responded that she would contact the Department of Labor if they did not address the problem. Shortly thereafter, Baker began calling the Department of Labor and encouraged her co-workers to do the same. Ultimately, the Department of Labor determined that most of the officers were due additional compensation. Many employees, including Baker, received a settlement compensating them for unpaid overtime.[1]

Baker's issues with the Police Department did not end there. According to Baker, the Department placed a tremendous amount of pressure on its officers to write tickets. According to Baker, and other officers, the Department denied promotions to officers that did not write enough tickets, and moved experienced officers that had trouble writing enough tickets to poorer areas where there were more opportunities to write tickets. According to Baker, she complained to her Sergeants about the ticket pressure, but continued to write tickets, and even made stops she would not have otherwise made, to keep her numbers up. Baker argues that the Department's pressure to write so many tickets unfairly targeted poor minority citizens, and took officers away from other important duties and investigations.

On March 2, 2017 Captain Bell and Major Clayton suspended Baker and placed her on administrative leave. On March 7, 2017 Baker was terminated in a meeting with Chief Aguirre,

---

[1] It is unclear from the record in this case precisely when the Department of Labor became involved and when the settlement took place.

Assistant Chief Gilbert, Lieutenant Mansell, Captain Bell, and Internal Affairs Investigator Sandlin.

Baker asserts multiple claims against the Department that generally fall into two categories: gender discrimination, and retaliation. Baker alleges that the Department wrongly fired her, which was discrimination against her because of her gender, and constituted retaliation against her for several separate allegedly unlawful reasons.

As to Baker's gender discrimination claim, she claims that the Department violated Title VII of the Civil Rights Act by treating her differently from similarly situated male employees. Specifically, that the Department fired her, but did not act against similarly situated male employees that engaged is the same conduct.

As to Baker's retaliation claims, she claims that the Department retaliated against her for four separate reasons: First, Baker claims that the Department violated the FLSA when it retaliated against her and fired her after she led the effort to remedy the Department's failure to compensate employees for overtime work. Second, Baker claims that the Department violated Title VII of the Civil Rights Act by firing her in retaliation for her opposition to Miller's unwanted sexual advances. Third, she asserts a claim under 42 U.S.C. Section 1983 arguing that the Department violated the First Amendment when it fired her in retaliation for statements she made to citizens during traffic stops. Finally, Baker asserts a claim that the Department violated Title VII, and 42 U.S.C. Section 1981 and the Equal Protection Clause, by firing her in retaliation for her opposition to the Department's allegedly racist ticketing policies.

The Department now requests summary judgment in its favor on all of Baker's claims. The Department first argues that Baker abandoned her gender discrimination claim. As to Baker's retaliation claims, the Department argues that Baker cannot establish elements of her claims, and

that even if she could, the Department fired her for legitimate non-discriminatory reasons.

*Summary Judgment Standard*

Summary Judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

i. *Title VII: Gender Discrimination*

As noted above, in her Complaint, Baker claims that the Department violated Title VII of the Civil Rights Act by treating her differently from similarly situated male employees. Specifically, that the Department fired her, but did not act against similarly situated male employees that engaged is the same conduct. The Defendant now requests summary judgment in its favor on this claim for procedural and substantive reasons. The Plaintiff did not offer a response to the Defendant's arguments, and did not address her gender claim in her response at all. Because the Plaintiff has abandoned this claim, Summary Judgment is granted in the Defendant's favor as to Baker's gender discrimination claim asserted under Title VII of the Civil Rights Act. See *Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108 (5th Cir. 2005) (finding a District Court's grant of Summary Judgment proper when a party abandons the claim in their briefing).

ii. *Retaliation: Fair Labor Standards Act*

The Fair Labor Standards Act includes an anti-retaliation provision, which strengthens employees' ability to assert their FLSA rights without having to worry that their employer will punish them for doing so. Susan Prince, Employer's Guide to Fair Labor Standards. Act ¶ 940 (2015). The Act states in relevant part:

> . . . it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). In order to establish a *prima facie* case for an FLSA retaliation claim, a

plaintiff must make a showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).[2] If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-retaliatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817. If a defendant meets its burden of production by articulating a legitimate reason for the adverse action, the burden shifts back to the plaintiff to establish pretext. *Id*. at 805, 93 S. Ct. 1817. A plaintiff must ultimately prove by a preponderance of the evidence that "the adverse employment action would not have occurred 'but for' plaintiff's protected activity." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 580 (5th Cir. 2004).

Baker raised objections to the Department's failure to accurately pay the officers for overtime hours after she noticed that her pay stubs incorrectly reflected the hours that she worked. She was not alone, her fellow officers shared a similar experience. The summary judgment record supports the allegation that Baker led the charge to remedy this pay disparity. During a meeting with Deputy Chief Gilbert and Captain Bell, Baker informed them that she planned to contact the Department of Labor if they did not address the problem. Not only did she contact the Department of Labor, she encouraged her co-workers to follow suit. The Department fired Baker less than two months after her complaint to the Department of Labor. Baker contends that the Department fired her because of her efforts to seek a remedy under the FLSA.

The Police Department does not contest Baker's *prima facie* case.[3] Instead, the Department

---

[2] Although *McDonnell Douglas* was a Title VII case, the burden-shifting framework established therein has been adapted and applied to cases under the FLSA. *Hagan*, 529 F.3d at 624.
[3] It is undisputed, at least for purposes of summary judgment, that Baker engaged in a protected activity when she complained to the Department of Labor and encouraged others to do the same, suffered an adverse action when she

6

argues that it fired her for legitimate non-retaliatory reasons, falsification of probable cause during traffic stops, and for comments she made to citizens and other officers about Department pressure to write tickets. Having met its burden of production, the burden shifts from the Defendant back to the Plaintiff to establish pretext. *McDonnell Douglas*, 411 U.S. at 805, 93 S. Ct. 1817.

As to pretext, Baker first argues that her traffic stops were supported by probable cause, and points to internal disagreement within the Department as to the same to support her argument. For example, the Department argues that Baker falsified probable cause when she made traffic stops for failure to use a signal when turning from private property onto a public highway. Baker responds by arguing that she did not fabricate probable cause, and that there is disagreement within the Department as to whether a signal is required in that situation.

In his deposition, Chief Aguirre stated that he did not know whether entering a public highway from private property required a signal or not. The Chief also had the department conduct research to determine the answer. Lieutenant James Hood testified in his deposition that in his opinion, a person is required to use a signal when leaving private property when turning into a public highway. In addition, Deputy Chief Gilbert testified that he could not state whether Baker knew it was not a crime when she pulled those individuals over for failure to use a turn signal. In their deposition testimony, Lieutenant James Hood and Sergeant Jason Whitenton both testified that a signal was required when turning onto a public highway.[4] The Department also points to a few other stops made by Baker for which it argues she lacked probable cause. Baker argues that while different officers could disagree as to the reasons for the stops, she believed she had

---

was fired, and that there is a causal connection, between her complaint and her firing.

[4] Baker also argues that the Department has a general lack of concern for probable cause and points to other civil court cases where individuals have successfully sued the Department for constitutional violations related to probable cause. The Court finds these other cases have limited relevance in this case due to a lack of foundation and lack of common facts and issues with the instant case.

reasonable cause for the stops, and that the videos and other evidence support her argument.

The Department also asserts that it fired Baker because she told another officer, Marshall, that she was going to start stopping people driving Mercedes and BMWs and older people to issue them tickets in an effort to get them to complain to city hall, with the hope that these complaints would put pressure on the Department to stop writing so many tickets. Baker denies making that statement to Marshall, but does not dispute that she apologized to at least one citizen after writing them a ticket, and telling them that she was under pressure to write tickets.

The Court finds that these types of disputed facts are precisely the types of facts that are ripe for jury consideration, and inappropriate for summary judgment adjudication. Given the internal disagreement within the department about the basis for Baker's traffic stops, and the temporal proximity between Baker's labor complaints and her firing, the Court finds that material questions of fact exist as to pretext on Baker's FLSA retaliation claim. Although the Department alleges that it initiated its internal affairs investigation into Baker's stops due to citizen complaints, there is only one citizen complaint in the record, and it is dated March 1, 2017, only one day prior to Baker's suspension. In addition, Baker denies making the statement to Marshall as alleged. The Court will "not make credibility determinations or weigh the evidence" at this summary judgment stage. *Reeves*, 530 U.S. at 150, 120 S. Ct. 2097. The Court finds that the Plaintiff has brought forth evidence from which a reasonable jury could infer pretext, and has pointed to genuine disputes of material facts as to pretext as well. For all of these reasons, the Department's request for summary judgment on this claim is denied.

iii. *Retaliation: First Amendment*

Baker also claims the Department violated Section 1983 and the First Amendment when it fired her for a statement she made during a traffic stop. To establish a Section 1983 claim for

employment retaliation related to speech, a plaintiff-employee must show: (1) she suffered "an adverse employment action," *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004); (2) she spoke "as a citizen on a matter of public concern," *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006); (3) her interest in the speech outweighs the government's interest in the efficient provision of public services, *Pickering v. Board of Ed. Tp. High School Dist. 205, Will County, Illinois*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968); (4) the speech "precipitated the adverse employment action." *Alexander*, 392 F.3d at 142.

It is undisputed that Baker was subjected to an adverse employment action when she was suspended and terminated by the Tupelo Police Department. It is also undisputed that Baker told at least one citizen during a traffic stop that she was under pressure to write tickets. The question here is whether she spoke as a citizen on a matter of public concern when she made that comment.

Baker worked for the Tupelo City Police Department, making her a government employee. "The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. at 418, 126 S. Ct. 1951; *see also Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).[5] The Supreme Court stated in *Garcetti* "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id* at 421, 126 S. Ct at 1960. "An employee is not speaking as a citizen – but rather in his role as an employee – when he makes statements pursuant to his official duties." *Id*. In *Williams*

---

[5] "This consideration reflects the importance of the relationship between the speaker's expression and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Garcetti*, 547 U.S. at 418, 126 S. Ct. 1951.

*v. Dallas Independent School District* the Fifth Circuit explained that an employee speaks "pursuant to their official duties" in two instances: when the speech is required by the job and/or the speech is related to the employee's job duties or activities. 480 F.3d 689, 692 (5th Cir. 2007). The Court further explained that "activities undertaken in the course of performing one's job are activities pursuant to official duties. *Id*.

Baker relies on *Lane v. Franks* to support her argument that her speech is protected. 573 U.S. 228, 240, 134 S. Ct. 2369 189 L. Ed. 2d 312 (2014). The *Lane* Court held that "the critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*. at 240, 134 S. Ct. 2369. The Plaintiff in *Lane*, a public employee, testified in a criminal trial about municipal corruption and was later fired. The *Lane* Court held that his sworn testimony fell outside the scope of his ordinary job duties and was entitled to First Amendment protection. *Id*. at 240-41, 134 S. Ct. 2369.

Baker also relies on a decision of this Court, *Hardy v. City of Tupelo*, No. 108-CV-28-SA, 2009 WL 3678262 (N.D. Miss. Nov. 2, 2009).[6] The Plaintiff in that case, a Tupelo police officer, spoke out about racial discrimination within the Department at a community meeting convened for the purpose of discussing race relations. *Id.* at *1. In *Hardy* this Court held that the weight of the evidence supported a finding that the officer's speech was protected. *See id*. at *3-10.

In the instant case, Baker's comment about ticketing pressure came during the act of issuing a ticket. The Court finds that this is clearly "ordinarily within the scope of [Baker]'s duties" and readily distinguishes her speech from that of the cases she relies on above. *Lane* 573 U.S. at 240, 134 S. Ct. 2369. Because the Court finds that Baker's comment was not protected by the First

---

[6] A jury returned a verdict for the Plaintiff on the First Amendment claim in this case, and the Court ruled on post-trial motions in this cited opinion.

Amendment, summary judgment is granted in the Department's favor on this claim.

    iv.    *Retaliation: Sexual Harassment*

In her Complaint, Baker claims that the Department violated Title VII of the Civil Rights Act by firing her in retaliation for her opposition to Miller's unwanted sexual advances. The Defendant now requests summary judgment in its favor on this claim on procedural and substantive bases. The Plaintiff did not offer a response to the Defendant's arguments, and did not address this retaliation claim in her response at all. Because the Plaintiff has abandoned this claim, Summary Judgment is granted in the Defendant's favor as to Baker's claim for retaliation based on her sexual harassment complaint asserted under Title VII of the Civil Rights Act. *See Cutrera*, 429 F.3d at 108 (finding a District Court's grant of Summary Judgment proper when a party abandons the claim in their briefing).

    v.    *Retaliation: Ticketing Policies*

Finally, Baker asserts a claim that the Department violated Title VII, and 42 U.S.C. Section 1981 and the Equal Protection Clause, by firing her in retaliation for her opposition to the Department's allegedly racist ticketing policies.[7] The Department argues that Section 1981 "only concerns claims for 'race' discrimination and therefore this section has no application under the facts of this case." The Department offers no other argument in support of its request for summary judgment in its favor on this claim.

The Department is not correct.[8] Retaliation against an individual for opposing

---

[7] The Department fails to address this claim in the Title VII context, and Baker reasserts her claim in her response brief. *See* [47] FN 8.

[8] The Parties have conflated their arguments on these claims to a certain extent. To be clear, the Court notes that although claims of retaliation are commonly brought under the First Amendment and may also be brought under Title VII, retaliation claims growing out of complaints of employment discrimination have not been recognized under the Equal Protection Clause of the Fourteenth Amendment; "the Equal Protection Clause does not preclude workplace retaliation." *Matthews v. City of W. Point, Miss.*, 863 F. Supp. 2d 572, 604–05 (N.D. Miss. 2012) (citing *Robinson v. Jackson Public School Dist.,* 2011 WL 198127, at *5 (S.D. Miss. Jan. 20, 2011) (gathering other cases).

discrimination of another can result in a claim under both Title VII and Section 1981, even when a plaintiff is not a member of the protected class. This Court has declined to grant summary judgment on a similar claim brought under Title VII by a police officer that opposed a race-based arrest policy. See *Matthews v. City of W. Point, Miss.*, 863 F. Supp. 2d 572, 595 (N.D. Miss. 2012) (holding that "the Court is also unable to conclude as a matter of law that Defendant did not create an employment environment polluted with racially-discriminatory practices."); see also *Rogers v. EEOC*, 454 F.2d 234, 236 (5th Cir. 1971), *cert. denied, superseded by statute on other grounds as stated in Harrington v. Harris*, 118 F.3d 359, 367 n. 8 (5th Cir. 1997) (reversing the lower court's finding that the complainant, a Spanish-surnamed woman, who brought a complaint before the EEOC alleging that the group of optometrists she worked for acted in a discriminatory manner in violation of Title VII by "segregating the patients" and espousing a very broad standard, stating that while "the district court may have viewed lightly the connection between the petitioners' alleged discrimination against its patients and Mrs. Chavez's sensibilities . . . the relationship between an employee and his working environment is of such significance as to be entitled to statutory protection . . . [P]etitioners' failure to direct intentionally any discriminatory treatment toward Mrs. Chavez is simply not material to the finding of an unlawful employment practice."); see also *Vance v. Ball State Univ.*, 570 U.S. 421, 426, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013).

Section 1981(a) provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981(a). The Supreme Court has held that Section 1981 encompasses "the claim of an

individual (black or white) who suffers retaliation because she has tried to help a different individual, suffering direct racial discrimination, secure their § 1981 rights." See *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452, 128 S. Ct. 1951, 1958, 170 L. Ed. 2d 864 (2008). However, recovery against a municipality under Section 1981 may not be predicated on a theory of *respondeat superior. Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Evans v. City of Houston*, 246 F.3d 344, 357 (5th Cir. 2001). Rather, a municipality may be held liable under Section 1981 for the deprivation of rights guaranteed by the Constitution or federal law only if the deprivation was the result of an official policy or custom. *Evans*, 246 F.3d at 358 (applying "custom or policy" test for municipality liability under 42 U.S.C. Section 1983 to claim against city under Section 1981).

The Fifth Circuit has defined an "official policy" as:

> [a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is [a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Id*. (internal citations and quotation marks omitted, brackets in original).

Baker claims that the official policies of the Department violate the Section 1981 and the Equal Protection clause. Both alleged violations are based on the testimony that the Department targets the African American community to produce more citations. Baker claims that her termination was part of a scheme to eliminate opposition to the department's allegedly discriminatory ticketing practice.

Officer James Andrews' deposition testimony sheds light on whether it was an "official

policy" to target the African American community. He testified:

> Q: Have you ever heard the term low hanging fruit?
> A: Yes.
> Q: And tell me, is that something that law enforcement officer discuss?
> A: It was something that I used to discuss.
> Q: Tell me about that.
> A: I used to work in kind of a worser [sic] area of Tupelo . . . Ida and down there on Monument and Lawndale, in that area. But, you know, when we were getting pressured for tickets and stuff, I started noticing officers that were assigned to the west side of town like way out there by Ballard Park and stuff sitting on Ida Street pulling people over writing tickets. And I didn't personally like that because that was my area. But at the same time, you know, I felt like they were – that's what made me think when you said the low hanging fruit, the easy ones to get.
> Q: Did they ever tell you why they were hanging out on Ida Street?
> A: Because they needed tickets so they wouldn't get in trouble.

*See* James Andrews Deposition [45-13]. This same practice is explained in the testimony of Officer Jacob Whitlock. He testified:

> Q: . . . Do you believe you were ever moved to a different zone because you didn't write enough tickets?
> A: I was told that I was moved to a different zone because I did not have high enough numbers. Yes.
> Q: And who told you that?
> A: I guess it depends on which time.
> Q: How many times have you been moved to a different zone because you didn't have enough tickets?
> A: One time for sure . . . That was Sergeant Hassel that told me that.
> Q: And what zone did he move you from and to?
> A: I was working Zone 5, which is Southwest Tupelo, and then I was moved to Zone 8, which is Central Tupelo.
> Q: Is Zone 5 a more affluent area, lower crime area?
> A: It's a lower crime area. Yes, sir.

*See* Jacob Whitlock Deposition [45-17].

Viewing the evidence in the light in the most favorable to the Plaintiff, the Court finds that the Plaintiff has met her pleading standard relative to her retaliation claims related to the Department's ticketing practices, and the Department failed to meet its initial summary judgment burden of "informing the district court of the basis for its motion and identifying those portions

14

of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The Department's request for summary judgment in its favor is denied on these claims.

*Conclusion*

For the reasons stated above, the Defendant's Motion [40] is GRANTED in part and DENIED in part. Summary Judgment is GRANTED on the Plaintiff's Title VII gender discrimination claim, GRANTED on the Plaintiff's Title VII retaliation claim related to sexual harassment, and GRANTED on the Plaintiff's First Amendment retaliation claim. Summary Judgment is DENIED on the Plaintiff's FSLA retaliation claim, and DENIED on the Plaintiff's Title VII and Section 1981 retaliation claims related to the Department's ticketing policies.

So ORDERED, this 7th day of May, 2019.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE